## CLARENCE E. GAY & others *vs.* JOHN D. BATES.

In an action for the rusting of the plaintiff's iron in the defendant's warehouse by its neigh borhood to salt also stored there, the declaration alleged that the defendant received the iron for storage on the ordinary contract of a warehouseman; and the answer denied this, and alleged that it was received on a contract by which the plaintiff assumed all risk of its being injured by the salt. *Held,* that the burden of proof at the trial did not shift to the defendant upon his admitting that he received the iron and stored it where it was injured by salt; but was on the plaintiff throughout to establish the contract on which he relied, and not alone the particular facts from which he sought to deduce it.

In an action against a warehouseman for the rusting of the plaintiff's iron in his warehouse, a letter written by his servant (who had charge of the warehouse) to the plaintiff before the date of the writ, in which, after setting forth that there is a difference of opinion as to the condition of the iron, the writer proposes to allow to the plaintiff the amount of his claim in storage, on the ground that the writer is disposed to do what is just and right, deems it injudicious for either party to incur the expense of a lawsuit, and fears that if he should pay the claim "for a damage" it would involve him in trouble with his employer, is inadmissible in evidence as an admission of the defendant's liability.

CONTRACT. Writ dated September 16, 1867. The declara-tion alleged that the defendant was carrying on the business of

warehouseman at Bartlett's Wharf in Boston, of which he was lessee, when the plaintiffs delivered to him fifty-five tons of iron which he received for storage on the ordinary contract of a warehouseman, whereby he became bound to use reasonable care to preserve the iron from rusting; and that through his negligence the iron was rusted and injured. The answer admitted the receipt of the iron from the plaintiffs for storage; denied that it was received on such a contract as was alleged in the declaration; and alleged that, on the contrary, when the plaintiffs offered the iron for storage, the defendant replied that there was salt stored in the only warehouse where he had room for the iron, and the iron would be liable to become rusted if placed there, but the plaintiffs nevertheless requested him to receive the iron, saying that they would themselves assume all risk of its rusting from neighborhood to the salt; that he received it only on that condition, and under that agreement of the plaintiffs; that he was guilty of no negligence; and that the iron, if rusted, was rusted from its neighborhood to the salt.

At the trial in the superior court, before *Ames,* C. J., it appeared that the defendant was personally engaged in business elsewhere than at Bartlett's Wharf, and intrusted the whole management of his warehousing business at that place to William H. Nichols, the wharfinger, between whom and the plaintiffs the contract for storing the iron was made; but there was no evidence that Nichols had any authority from the defendant to settle claims for injuries to warehoused property. And it appeared also, and was admitted by the defendant, that the iron was received by him and stored in a warehouse containing salt, by neighborhood to which it was badly rusted and injured.

The plaintiffs offered in evidence, in the course of the trial, two letters addressed to them by Nichols under the dates respectively of January 22 and January 28, 1867. The first acknowledged the receipt from the plaintiffs of a bill for $580 for the injury of the iron; suggested that in this bill it was claimed that all the iron was injured, but that such was not the fact; mentioned previous letters of the plaintiffs as preferring a claim for only $495, and statements of the plaintiffs that appraisers

did not agree in their estimates of the percentage of injury; and ended as follows: " Now, on account of these few circumstances, and others that I have at hand, I do not feel inclined to settle such a bill as that presented, thinking that it is out of reason, and not in equity at all with the existing circumstances, and will wait until further investigation." This letter the judge admitted; but excluded the second letter, (which was as follows,) upon the ground that it was an offer of compromise, although the plaintiffs stated " that they did not offer it to show the amount, but only the fact, of the defendant's liability : "

" In reply to your last, I would say that there seems still to be quite a difference of opinion as to the exact statements heretofore made, and condition of the iron at the time of taking it away from the wharf. But at the same time I am disposed to do exactly what is just and right between man and man, and do not think it would be judicious for either party to incur any more of an expense by going to law; and still I do not want to pay such an amount *for a damage,* as it places me in a bad fix with the lessees of the wharf, and therefore make this proposition to you, viz: to make Bartlett's Wharf indebted to you for amount of bill, and you to make up the amount in wharfage and storage on iron or any goods that you may send to us,. at rates one quarter off the regular price. This is the easiest way for me, and to you makes no great difference in the long run,. as you are constantly wanting storage room of some kind,. and. I. have such as will accommodate you. I hope this proposition will meet your approval, and save us both all further annoyance."

On the question of the terms of the contract on which the iron was received by the defendant there was a conflict of testimony, each party introducing evidence which tended to prove that it was as alleged in the declaration or in the answer respectively. The plaintiffs contended " that, they having introduced proof of the reception of the iron and of its having been damaged, which facts were admitted by the defendant, the burden of proof was on the defendant to establish the contract as set forth in his answer;" and asked for a ruling to that effect. The judge did

not so rule, but instructed the jury substantially as follows·
" That the burden of proof was on the plaintiffs to show what
the contract was under which the property was stored on the de-
fendant's wharf; that proof of its delivery and acceptance would
be *primâ facie* evidence that it was left there on such terms as
to bring the defendant under the general common law liability
of a warehouseman, responsible for reasonable and ordinary
care, attention and skill in its storage; but that proof of such
delivery to the defendant as a warehouseman did not of itself
shift the burden of proof; and that it was for the jury to say, on
all the evidence, whether the plaintiffs had shown by a prepon-
derance of proof that the contract was such as in their declara-
tion they had alleged."

The jury returned a verdict for the defendant; and the plain-
tiffs alleged exceptions.

*H. F. Smith*, for the plaintiffs. 1. The facts relied upon by
the plaintiffs having been admitted by the defendant, and the
latter relying upon a new and distinct proposition of fact
(namely, the special contract for the storage of the iron at the
plaintiffs' own risk,) to avoid it, the burden of proof was on the
defendant to establish this new substantive fact. *Powers* v. *Rus-
sell*, 13 Pick. 69, 76, 77. *Delano* v. *Bartlett*, 6 Cush. 364, 366.
*Gray* v. *Gardner*, 17 Mass. 188. *Randolph* v. *Easton*, 23 Pick.
242. *Kilburn* v. *Bennett*, 3 Met. 199. *Kingsley* v. *New Eng-
land Insurance Co.* 8 Cush. 393, 404. *Thayer* v. *Connor*, 5
Allen, 25.

2. The letter of January 28 was not an offer of compromise ;
and, even if it was, it admitted independent facts, (namely, the
defendant's liability, and the damage and fault in which such
liability originated,) and therefore was admissible. *Marsh* v.
*Gold*, 2 Pick. 285. *Gerrish* v. *Sweetser*, 4 Pick. 374. *Dickin-
son* v. *Dickinson*, 9 Met. 471. *Snow* v. *Batchelder*, 8 Cush. 513.
*Harrington* v. *Lincoln*, 4 Gray, 563.

*J. C. Gray, Jr.*, for the defendant, was not called upon.

WELLS, J. Upon proof of the character of the defendant as
warehouseman, and the delivery to and receipt by him of the
iron for storage, the law, in the absence of other facts, would

imply a contract upon the one side to pay a reasonable compen-sation, and on the other to keep safely and in a propei place, and to exercise reasonable care against injury to the deposit. These facts are admitted; but these facts are not the contract which is the cause of action. The contract is the legal inference from the facts; and that is put in issue by the pleadings. The inference of law furnishes to the plaintiff a *primâ facie* case, so far as proof of a contract is required; but it does not change the bur-den of proof. The defendant relies upon an express stipulation, at the time of the deposit, that he should not be responsible for injury from rust caused by the previous use of the storehouse for storing salt; and upon the fact that this condition of the place of deposit was known and acquiesced in by the plaintiffs. Of course, the defendant must produce some evidence of facts upon which he relies to limit or qualify his obligations. The effect of such evidence is, not to avoid, but to disprove the contract which the plaintiffs seek to deduce by inference from the circum-stances of the deposit. The question is still the same: What is the contract to be implied from the facts? Is it such as to include the plaintiffs' alleged cause of action? That is the ulti-mate fact which the plaintiffs must maintain.

The letter of January 28 was rightly excluded. We can see no significance whatever in the letter except as a mere proposal of compromise.                                    *Exceptions overruled.*