PATRICK v. CROWE ET AL.

1. TRIAL JUDGE — WHEN NOT DISQUALIFIED.— The part ownership of a mine by the brother of the judge before whom an action involving a lease of part of the property is about to be tried does not of itself disqualify the judge from presiding at the trial, the brother's interest not being covered by the lease or in any way affected thereby. The trial judge being of the opinion that he would not be influenced by such matters, his order overruling plaintiff's application for a change of venue, based thereon, will not be disturbed.

2. ATTORNEY AT LAW — BROTHER OF TRIAL JUDGE.— Neither is the judge necessarily disqualified by the fact that his brother is an attorney for one of the parties in the case, and that the judge himself was an unsuccessful bidder for a lease of the mine.

3. PLEADINGS — AMENDMENT OF.— Where the complaint on file is based upon a written lease and an assignment thereof, the former containing a forfeiture clause binding upon all parties, it is not error when the cause is about to be reached for trial to refuse to permit an amended complaint to be filed by which the written instrument is sought to be set aside or reformed so as to relieve plaintiff entirely from the effects of the clause of forfeiture.

4. OFFER OF COMPROMISE — EVIDENCE OF — WHEN NOT ADMISSIBLE.— A party cannot be compelled, against his will, to testify as to the details of an offer of compromise made by him for the purpose of preventing litigation.

5. WRITTEN OFFER OF SETTLEMENT — EVIDENCE OF.— A written offer of compromise made by one of defendants, and rejected by plaintiff, is not rendered admissible against the latter by the fact that he read it without specifically objecting to matters therein contained prejudicial to his case.

6. WHEN REFUSAL TO PERMIT CROSS-EXAMINATION ERROR.— Where defendant testifies to a conversation with plaintiff, which discredits the latter's testimony, the refusal to permit defendant to be fully cross-examined as to such conversation is error.

*Appeal from District Court of Pitkin County.*

THIS action was instituted by appellant Lucien L. Patrick, as plaintiff below, against appellees, George W. Crowe *et al.*, to procure a decree declaring plaintiff to be the owner of a half interest in a lease upon an eleven-twelfths interest in the " Celeste " lode, a mining claim situate in Pitkin county, Colo. In the month of April, 1888, the Celeste claim was owned by the following parties, to wit: Charles H. Graham, Meyer Guggenheim, John A. Ewing and A. W. Rucker; the latter being one of the attorneys of record for appellees in this cause. About this date the aforesaid parties, with the exception of said Rucker, they then owning eleven-twelfths of the property, being desirous of having the same worked under lease, advertised for bids for a lease upon the property. In response to such advertisement bids were put in by a number of parties, among whom were George W. Crowe, one of the present appellees, Hon. T. A. Rucker, the judge who afterwards presided at the trial of the cause in the court below, E. R. Holden and Benjamin Guggenheim,

jointly, and others. E. R. Holden and Benjamin Guggenheim were the successful bidders, and a lease was thereafter duly executed to them.

It is unnecessary to state the terms of this lease further than to say that it provided for the working of the mine under the royalty system for the period of eighteen months, and that it required the lessees to keep at least two men at work upon the property, and that a failure so to do for a period of ten days would entitle the lessors to declare the lease forfeited.

Shortly thereafter Holden and Guggenheim executed to George W. Crowe, one of the appellees herein, a sublease upon a three-fourths interest in the property. A few days after the execution of this sublease the following written contract was entered into in relation thereto between appellee Crowe, as party of the first part, and L. L. Patrick and Mrs. William F. Patrick, parties of the second part, viz.: "This deed of assignment and agreement, combined, made this 23d day of April, 1888, by George W. Crowe, of the county of Arapahoe and state of Colorado, of the first part, and Lucien L. Patrick and Mrs. William F. Patrick, of the county of Lake and state of Colorado, parties of the second part, witnesseth: That for and in consideration of the sum of one hundred and sixty-six dollars, sixty-six and two-thirds cents, lawful money, to the party of the first part in hand paid by the parties of the second part, the receipt whereof is hereby confessed, and in further consideration of the sum of money hereinafter mentioned, to be paid and expended as hereinafter expressed, and in further consideration of each and all the covenants and agreements hereinafter expressed, to be kept and performed by the parties of the second part, the party of the first part has sold, assigned, transferred, and set over, and by these presents does sell, assign, transfer, and set over, unto Lucien L. Patrick an undivided three-eighths, and unto the said Mrs. William F. Patrick an undivided one-eighth, interest in a certain lease of the Celeste lode mining claim, situate in the Roaring

Fork mining district, in Pitkin county, and state of Colorado; the said indenture of lease bearing date the 1st day of April, A. D. 1888, and being for the term of eighteen months from the date thereof; said lease being originally executed to Benjamin Guggenheim and E. R. Holden; to have and to hold the same unto them, their heirs, executors and assigns, with the privilege thereunto belonging.

"The parties of the second part, in consideration of the foregoing assignment and transfer, agree to expend within the period of sixty days from the date hereof, in working said mine and developing the same for ore and ore bodies, the sum of $1,000; provided, however, that the proceeds of all. ore taken from said mine and sold during the said period of sixty days shall be applied to the payment of the expenses incurred in working the same; and if, on account of the application of the proceeds of the sales of ore taken and sold from said mine during said period of sixty days, the sum of $1,000 shall not have been wholly expended as aforesaid during said period, then the parties of the second part agree to refund to the party of the first part the one-third of such unexpended balance of said sum of $1,000 on request of the party of the first part.

"It is further agreed that in case the said sum of $1,000 shall be wholly expended within the mine without the mine producing enough ore to pay the expenses thereof, then the parties of the second part agree to be responsible for and pay the two-thirds part of all expenses of every kind incurred in working said mine, over and above the proceeds of ore taken therefrom, it being understood that the proceeds of ore taken from said mine shall be first used in paying' the expenses of working the same.

"The party of the first part hereby reserves to himself equal authority and voice in the management of said property with the parties of the second part.

"It is further agreed between the parties hereto that no salary or salaries shall be paid for superintending or managing the working of said property until the same is on a paying basis.

" The parties of the second part hereby agree to keep, abide by, and perform all the conditions, covenants and agreements expressed in said lease of said mine, to the full extent of their respective interests therein; and in case of the failure of the parties of the second part, or either of them, to keep and perform each and all of the agreements and covenants herein expressed, he, she or they, as the case may be, shall forfeit his, her or their interest in said lease, and the same shall immediately revert to the party of the first part.

" In witness whereof the parties have hereto set their hands and seals the day and year first above written. [Signed] Geo. W. Crowe.   L. L. Patrick.   Mrs. William F. Patrick."

The foregoing is the instrument set forth and relied upon in the original complaint, in which pleading it is further alleged that the contract was entered into by L. L. Patrick on his own behalf and as agent for Mrs. W. F. Patrick, and that, Mrs. Patrick failing to take the portion assigned to her, plaintiff succeeded to said interest. Continuing, the plaintiff alleges that he had expended and become liable for the sum of $1,000 prior to the 10th day of July, 1888, in prosecuting the work under the written agreement, and the letting of the contract for the sinking of a shaft upon said property to the depth of one hundred feet at a cost of $9.50 per foot, the sinking of the shaft to the depth of fifty feet, and the suspension of further work on account of water, and Crowe's acquiescence in such suspension, the keeping of two men at work thereafter to prevent forfeiture of lien. The familiarity of Ellis with these arrangements is also alleged, and he is made a party defendant.

It is also stated that Crowe and Ellis conspired together to bring about a forfeiture of the contract, and that they did take possession of the mine and work the same at a large profit.

So far as the answer to this complaint need be noticed, it consists of a specific denial of each allegation of the com-

plaint, except the agreement of the 23d of April, and as to such agreement it alleges failure on the part of the plaintiff to carry out its terms, and his abandonment of the enterprise; also the subsequent declaration and claim of forfeiture and transfer of a three-eighths interest in the contract by Crowe to defendant Gilbert.

The action was originally commenced in the district court of Arapahoe county. The defendants, however, asked for a change of venue to Pitkin county, resting their motion for that purpose upon the ground that the subject-matter of the controversy was situated there. This motion was resisted by plaintiff on the alleged ground that A. W. Rucker was an owner in the Celeste lode, and that Thomas A. Rucker, the judge of the district court of Pitkin county, was also interested in said property. To these allegations the defendants replied, with affidavits of G. W. Crowe and A. W. Rucker, showing that the latter had never leased his interest in the mine, had no interest in the lease, and that Thomas A. Rucker had neither an interest in the property or lease. The venue was changed in accordance with the motion. A. W. Rucker had not, however, up to this time entered his appearance as an attorney for the defendant in the cause.

On the 18th of March, 1888, in the district court of Pitkin county, plaintiff in turn petitioned for a change of venue. This petition, in addition to the claim of interest of the Ruckers, asserted, among other things, that the judge would be influenced against plaintiff on account of A. W. Rucker being one of the attorneys for defendants; that said attorney, in conversation with T. J. O'Donnell, attorney for plaintiff, had expressed a strong interest in the controversy prior to his being employed in the case; that the judge had been a bidder for a lease on the Celeste, and that his failure to secure the same was in part caused by plaintiff; that one Balderson, a brother-in-law of Crowe, and editor of the Aspen Times, had published an article in said paper about the matters in controversy in the suit, for

the purpose of influencing the decision. In reply, an affidavit was made and filed by A. W. Rucker, again stating his relation to the property, and averring that he had no interest in the subject-matter of the suit; and also accounting for the interest he may have exhibited in the conversation with O'Donnell, by the claim that he had ascertained that Crowe was looking for him on the day of the conversation, and that he expected to be employed by Crowe, and he had so informed O'Donnell. The petition for change of venue was denied. The cause was set for hearing on the 11th of July following. On the 8th of July, notice was given by plaintiff of his intention to move for leave to file an amended complaint.

On the 10th of July a motion was made by plaintiff to be allowed to file an amended complaint. The motion was supported by the affidavit of his attorney, setting forth certain reasons why the complaint, as amended, setting up the alleged true cause of action, was not filed in the first instance. The reasons given, in substance, were that at the time of preparing the original complaint the attorney for the plaintiff had not seen the original correspondence between plaintiff and Crowe, and did not know that the same was in existence at the time. Affiant further stated that on account of other pressing business he did not prepare the original complaint as carefully as the importance of the case demanded; that he was compelled to dictate the complaint direct to a type-writer; that he "supposed, as a matter of law, and so advised plaintiff, that all that had occurred between himself and plaintiff was in law merged in said paper of April 23d; that he, at the time, had not given said question of law the same consideration he had since," and on account of press of business, and sickness followed by a death in his family, he was prevented from preparing the amended complaint at an earlier date.

The amended complaint tendered, in substance, alleges that plaintiff and defendant Crowe, about the 1st of March, 1888, entered into an agreement by which Crowe was to

attempt to get this lease for their joint and equal benefit; that the lease was awarded to Holden and Guggenheim, and, before the lease was actually made, Crowe entered into negotiations with Holden and Guggenheim for the assignment, and about the 22d of March, plaintiff and Crowe agreed to take the assignment from Holden and Guggenheim of three-fourths interest in the lease; that such assignment was made to Crowe, but for the joint and equal benefit of plaintiff and himself; that afterwards, Crowe, being in embarrassed circumstances, proposed selling plaintiff an additional one-eighth interest for $500; that the plaintiff was inexperienced, and without any considerable money, but, being desirous of assisting Crowe, offered to negotiate the sale of the one-eighth interest to Mrs. W. F. Patrick; that the negotiations resulted in the sale to her; that "they undertook to have their agreement reduced to writing;" that the result was the agreement of the 23d of April, which did not express the true relations of the parties, etc.; the commencement and subsequent suspension of work because of water was alleged, and the acquiescence of Crowe in such suspension; the keeping of men at work by plaintiff thereafter in response to requirements of the lease; and the expenditure of $1,000 by him under the lease.

In this pleading plaintiff also states that he attempted to make arrangements with the owners of the adjoining claims, the " Lottie " and the " Justice," to work the Celeste through their shafts. Plaintiff further alleges that he was called to Denver on the 8th of July, leaving the defendant Ellis to act for him in his absence; that Ellis, instead of doing this, conspired with Crowe to bring about a declaration of forfeiture, well knowing plaintiff's rights in the lease; and the taking of possession by Ellis and Crowe of the mine after the 10th of July, and the profitable working thereafter of the mine by them under the lease.

The court refused to allow the amended complaint to be filed, and the cause was tried upon the original complaint and answer. When the case was reached for trial the

court, on its own motion, and against appellant's protest, called a jury to determine certain questions of fact. The jury, however, returned answers favorable to the plaintiff. Notwithstanding this, a judgment was given in the defendants' favor, the findings of the jury having been first set aside by the court.

Messrs. T. J. O'Donnell, T. M. S. Rhett and Hugh Butler, for appellant.

Messrs. A. W. Rucker, G. W. Titcomb and L. S. Smith, for appellees.

Mr. Justice Hayt delivered the opinion of the court.

The first question to be considered under the assignments of error relates to the refusal of the district judge of Pitkin county to change the venue upon appellant's petition and affidavit. The application is based upon the alleged prejudice of the presiding judge, the Hon. T. A. Rucker, against the appellant. As grounds for such prejudice it is alleged, in substance:

(1) That A. W. Rucker, a brother of said judge, is one of the owners of the Celeste lode.

(2) That said A. W. Rucker is one of the attorneys of record for the defendants in this cause, and is interested in defeating plaintiff's claim.

(3) That the feelings and interest of A. W. Rucker, and his appearance in the case as counsel, will have an influence upon the said Judge Rucker's judgment, to the prejudice of plaintiff's rights.

(4) That the judge was himself an unsuccessful bidder for the lease under which both claim in this action.

(5) The recent publication of an article in a certain newspaper published at the place where the court was being held, for the purpose, as it is said, of influencing the decision of the judge in this cause.

Upon this showing plaintiff was not entitled to a change

of venue as a matter of right; for, although it is alleged that A. W. Rucker was at the time one of the owners of the Celeste, it is not shown that his interest was covered by the lease in controversy, or in any way affected thereby. That he was an attorney in this case did not, of itself, render his brother, the judge, incompetent to try the action. That as such attorney he might have an influence upon the determination of the case may be admitted; and yet this influence might arise entirely from his skill in conducting the defense as an attorney, and be wholly proper. And the fact that the judge was an unsuccessful bidder for a lease upon the property would not entitle plaintiff to a change of venue. As to the newspaper article, it is not at all probable that the judge could have been influenced thereby.

We cannot, therefore, say that the matters alleged, singly or together, show that Judge RUCKER was disqualified from presiding at the trial. He was the person called upon to decide as to whether or not for any reason his judgment might be unduly influenced by the matters set forth in the petition; and, he being of the opinion that he would not be influenced by the matters stated, we cannot disturb the order overruling plaintiff's application for a change of venue. A large discretion is lodged in the judge to whom such applications are made; and, while it cannot be said upon this record that there was error in overruling the petition for a change of venue in the case, the circumstances are such as might lead the plaintiff, and perhaps others, to question the propriety of Judge RUCKER's retaining the cause for trial before himself. As the judgment must be reversed for other reasons, we take the liberty of suggesting the advisability of calling in a judge of some other district to preside at the next trial, should one be had, unless a change of venue shall be granted in the mean time. We feel that all parties would be relieved from much embarrassment should this course be followed.

The next assignment of error is based upon the refusal of the court to permit the amended complaint to be filed. The

original complaint is based upon the written contract of April 23, 1888. The amended complaint covers twenty-seven pages of the printed abstract of record, and is composed largely of evidentiary matters that have no proper place in any pleading. Discarding the probative facts as surplusage, and we find that by this pleading the written contract of April 23, 1888, is sought to be set aside, and an interest in the Crowe lease established, on the theory of a contract of partnership between Crowe and Patrick antedating the lease, and by the terms of which the lease was to be procured in the name of Crowe for the benefit of the firm.

The permitting of proper amendments is a matter within the sound discretion of the trial court, the exercise of which will only be controlled in case of abuse. If the change proposed by the amended pleading in this case could have been properly allowed at any stage in the proceeding (a point we are not called upon to decide), the refusal at the time offered was certainly not an abuse of discretion. The cause had already been set for trial upon the following day, it having been at issue for several months. The complaint on file affirmed the written contract and asked for its enforcement. The amended complaint expressly disaffirms the written contract and sets up a prior verbal agreement contrary thereto.

The pleadings are not only inconsistent one with the other, but they are diametrically opposed to each other in all essential particulars. In the original complaint the interest of Patrick with Crowe in the lease is stated subject to forfeiture, and the plaintiff asks for relief from the forfeiture claimed by Crowe and Ellis. In the amended complaint the written instrument is sought to be set aside or reformed, so as to relieve plaintiff entirely from the forfeiture clause. By it the pleading attempts to set up a cause of action that would, if properly pleaded, have required a new answer and other and different evidence from that necessary, or even proper, under the issues as framed.

Notwithstanding the great liberality enjoined by the code in reference thereto, in practice the indulgence as to amendments must necessarily have some limit. In our opinion, the rejection of the amended complaint, under the circumstances, was not an abuse of discretion on the part of the trial court, and the assignment of error based thereon cannot, therefore, be sustained.

It is claimed that many errors were committed by the court to the prejudice of the plaintiff in admitting incompetent testimony against his objection, as well as in excluding competent testimony offered by him, upon the defendants' objection.

The first item that merits consideration relates to testimony admitted in reference to a compromise attempted between plaintiff and defendants after the dispute had arisen out of which the suit arose. A compromise was talked over between the parties, but not finally consummated. In reference to this attempted compromise the plaintiff, while upon the witness stand, was asked by defendant this question: " What was your proposition? " to which question his counsel duly objected. This objection was overruled, and the plaintiff was compelled to give in detail his proposition to Mr. Crowe, made for the purpose of bringing about a settlement of the matters here in suit. This was clearly error. The law favors compromises. If parties can be compelled against their will, as in this case, to detail offers made for the purpose of settling matters in dispute to avoid litigation, certainly no prudent person would feel safe in offering any concessions for the purpose of bringing about a compromise. The ruling of the court below, if upheld, would have the tendency of preventing all negotiations looking to that end.

If either party had in the course of these negotiations admitted any independent fact, such admission, under some circumstances, might have been proper evidence against the party making the same to establish such fact, if material; but the testimony was not offered for such purpose in this

instance, and should not have been admitted. 2 Whart. Ev. § 1090; *Hoghton v. Hoghton,* 15 Beav. 321; *Perkins v. Concord Railroad,* 44 N. H. 223; *Gay v. Bates,* 99 Mass. 263; *Durgin v. Somers,* 117 Mass. 55; *Draper v. Hatfield,* 124 Mass. 53.

Pending the negotiations for a compromise, and as a part thereof, the defendant Crowe caused to be drawn up a writing providing for the adjustment of the matters in dispute. This instrument was admitted in evidence against plaintiff's objection, although it was never signed by either of the parties. In fact the plaintiff absolutely refused to sign or agree to it. Inserted in this writing, which is quite long, are matters very prejudicial to plaintiff's case. In support of the ruling admitting this paper, it is claimed that, as it is shown to have been either read by or to plaintiff, he must therefore be held to have acquiesced in those matters contained therein to which he did not specifically object. As we have seen, this instrument was a part of the negotiations for a compromise. It is not shown that it was presented to the plaintiff under circumstances calling for a denial from him other than that to be implied from his withholding his signature. It was at most but an offer of compromise made by the defendant Crowe and rejected by the plaintiff. Had it emanated from the plaintiff, its admissibility as evidence might well be doubted. Originating, as it did, with the defendant, it should not, under the circumstances, have been admitted as evidence against the plaintiff. *Home Ins. Co. v. Baltimore Warehouse Co.* 93 U. S. 527.

The court also erred in sustaining defendants' objection to the request of plaintiff to be allowed to cross-examine the defendant Crowe as to the conversation in which defendant states that the plaintiff made the representation that his sister-in-law was his partner for the purpose of strengthening his financial ability. The witness had previously testified that the plaintiff had represented that his sister-in-law was in partnership with him for the purpose of strengthening his financial ability; and, as it was shown that Mrs.

Patrick, the person referred to as the sister-in-law, was not in partnership with the witness, the evident effect of the testimony was to cast discredit upon the plaintiff, who was a witness in his own behalf, and the plaintiff should have been permitted to have examined the witness fully in reference thereto.

The next objection to be considered is in reference to the question based upon the sworn answer of Crowe. In this answer the defendant Crowe denied under oath that he advised the plaintiff that the volume of water in said shaft was surface water. The question was objected to for the reason that it did not embody the entire paragraph of the complaint in which the language used occurs. After some discussion of counsel the court sustained this objection. This was error. As to whether or not the defendant Crowe advised plaintiff that the water in the shaft was surface water, and for this reason work should be discontinued until it disappeared, was a material question in the case. No good reason is perceived why the witness should not have been allowed to answer the question. The statement is complete in itself, without reference to other matters that appear in the same paragraph.

Upon the whole case the evidence is quite evenly balanced, as is shown by the fact that the jury decided for the plaintiff, while the findings of the court upon the same evidence are favorable to the defendants. An examination of the record convinces us that the plaintiff did not have a full opportunity to present his case in the court below. The force of his testimony was greatly broken, on the one hand, by objections that were improperly sustained; while, on the other, the force of his cross-examination of Crowe was weakened, if not entirely destroyed in some instances, by objections without merit, that were also sustained.

Under the circumstances we are of opinion that the judgment ought not to be allowed to stand. It is therefore reversed and a new trial ordered.

*Reversed.*