## EDMUND DURGIN *vs.* WILLIAM SOMERS & others.

Suffolk. Nov. 17, 1874. — Jan. 19, 1875. WELLS & DEVENS, JJ., absent.

A bond was given by A. to convey a lot of land at a price named per square foot. The bond was assigned to B., who employed C. to find a purchaser for the land, agreeing to pay him all he could get over the price named in the bond. C. sold the land at a higher price to D., to whom A. at the request of B. conveyed the land. In a suit brought by C. against B. to recover the excess over the price named in the bond, B. offered to show that C., at the time of his employment as agent, was interested in the land as owner or part owner, and did not disclose this fact to him, and contended that this concealment was a fraud upon him. *Held*, that the question of such ownership was immaterial.

Upon an issue whether the defendant was indebted to the plaintiff for services rendered as agent, a letter of the defendant to the plaintiff reciting the nature and terms of the employment and making an offer of compromise was offered in evidence by the plaintiff, and was admitted so far as it contained statements of fact, the judge instructing the jury that as an offer of compromise the letter was inadmissible, and in that aspect should have no weight. *Held*, that the defendant had no ground of exception.

Where, in an action against a firm to recover for services rendered by the plaintiff in the sale of land for the benefit of the firm, the members composing it defend jointly, and no one disclaims or denies his joint liability, proof of the plaintiff's employment by one of its members, who testifies that at the time of the employment the other defendants were partners, is sufficient to charge the firm.

Under a declaration alleging that the plaintiff was employed to sell, or procure a purchaser for land, which a third party had given bond to convey to the defendant, proof that the plaintiff was also to procure a deed of the land from such third party to the purchaser is not a variance.

CONTRACT against William Somers, J. H. Kling, E. W. Roff, Cyrus J. Anderson and W. C. Huntington, copartners under the style of William Somers & Co., to recover for services rendered in procuring a purchaser for a lot of land in Boston. The declaration contained two counts, the first alleging that the plaintiff was employed by the defendants to sell, or procure a purchaser for the land, and setting forth the services rendered ; and the second upon an account annexed. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows :

It appeared in evidence at the trial that the lot was originally owned by George W. Tuxbury, who, on January 1, 1871, gave a bond to the firm of Newman & Colby, to convey the land to them at the price of thirty-five cents a square foot. Newman & Colby owed the defendants a large sum of money, and the defend

ants, in pursuance of an arrangement made with the firm and their creditors, took all their assets upon payment of a certain sum ; and upon learning of the conditional interest that the firm had in this land, were desirous of obtaining the benefit thereof.

The plaintiff testified that the contract he relied on was made in the spring of 1871, and confirmed in the fall thereafter ; and that in January, 1872, he introduced a purchaser to the defend· ants, one P. G. Maguire ; and a deed of the land from Tuxbury to Maguire was put into the case by the plaintiff, the consideration thereof being $1687.50, as therein stated. To obtain this deed the defendants paid nearly $500 to Tuxbury, being the balance due under the bond, and the deed was then made to Maguire at the request and for the benefit of the defendants. The record title stood in Tuxbury all the time from January 1, 1871, to the time of the delivery of this deed to Maguire.

In relation to the alleged contract for his services, the plaintiff testified that Kling, one of the defendants, met him near the premises in May, 1871, and told him that he, Kling, wanted to get a deed of the land ; and the plaintiff replied that the land was not paid for ; that Kling then asked how much was due upon it, and requested the plaintiff to ascertain and let him know ; that the plaintiff next saw the defendant Somers, who said he wanted the plaintiff to see Tuxbury and ascertain how much there was due on the land, which the plaintiff agreed to do, and did ; that the plaintiff next saw Kling a few days after, and Kling said he would like to have the plaintiff get the land and find a purchaser, and he would pay him for doing so. He testified further as to the conversation as follows : " I told him I would try to get a purchaser. He said if I could, he would give me all I could get over thirty-five cents a foot, which was the price named in the bond. He wanted I should see Tuxbury, and how much there was due on the bond. I saw Tuxbury. Kling said they would pay the balance for the land. Wanted me to get a purchaser and they would pay to me all I got over thirty-five cents a foot. I told him I would try and sell it."

The plaintiff further testified that he next saw the defendant Somers on State Street, and he said that whatever Kling had done would be all right ; that he was one of the firm. This was in May. The plaintiff testified that he was then taken sick, but

in the latter part of the summer and fall he saw several persons about buying the land; that in November he was called upon by Somers, who asked him if he had sold the land, and said to the plaintiff that if he would, he would pay him as agreed.

This was substantially all the evidence offered by the plaintiff to prove his contract. The plaintiff then offered further evidence to show that he found and introduced Maguire as a purchaser, and then went with Kling to Tuxbury, where the amount agreed on was paid by Kling to Tuxbury; and the deed then made as above recited to Maguire.

The plaintiff further testified that after he had demanded payment in June, 1872, the defendant Kling offered to assign a certain mortgage on this land in settlement of the plaintiff's claim, upon condition that the plaintiff would pay the difference in amount. The plaintiff offered in evidence the following letter from the defendants to him, signed "William Somers & Co.":

"Boston, July 12, 1872. Dear Sir: Referring to our conversation some weeks since, in which we called your attention to the fact that P. G. Maguire, with whom you arranged to build on our lot on Clapp Street, of this city, was not able to use the $1000 in the operation which you named to us he would do, and referring further to our conversation last evening upon the same subject, as also the matter of a certain consideration alleged due you for your agency in the matter, embraced in an incidental conversation about a year ago, in effect that if you sold the land you might have all realized beyond thirty-five cents per square foot, and finding that the said Maguire, in failing to use the $1000 spoken of, is unable to finish the building, and in order to convince you that we mean to be entirely fair in the matter, we offer you the following proposition, viz.: Upon paying us at the rate of thirty-five cents per square foot for the land, together with what cash and material we advanced the said Maguire upon his operations and interest on the same, we will transfer to you a first mortgage which we now hold on the property, of $2500, and also a second mortgage on the same for $600. This latter mortgage is dated May 14, and the time is four months. It will enable you to foreclose in about two months, which will throw the attachment now upon the property, and is entirely clear of all liens upon the same, having examined the records this day and

find a lien for $58 on record, which only dates back to May 28 fourteen days after our mortgage was made and recorded. We should give no one else this proposition, and only to you in order that you may be convinced that our object is to deal fairly with you, provided you still feel as though we should hold ourselves for the conversation of a year ago. Under the circumstances we shall make no further advances either in material or money, and shall consider our proposition open to you for ten days from this date inclusive." The defendants objected to the admission of the letter, on the ground that it was merely an offer of compromise, but the judge ruled that it contained certain statements of fact, and so far was admissible, instructing the jury that as an offer of compromise it was inadmissible, and in that aspect should have no weight.

The plaintiff, in reply to a question by the judge, stated that his charge was for finding a purchaser and getting the land deeded to the defendants. At the close of the plaintiff's case, the defendants asked the judge to rule that upon this evidence there was a variance between the declaration and the proof; but the judge refused so to rule.

The defendants offered to show that when the alleged contract was made the plaintiff was wholly or in part the owner of the land in question, and that he was beneficially interested in the land, and continued so to own it and to be so interested until after the sale to Maguire; and that his interest or ownership was never disclosed to the defendants, and that they never knew of such ownership and interest until after the suit was brought; but the judge excluded the evidence offered, and ruled that the question of such ownership was immaterial in this case. And the defendants further offered in evidence the following written agreement between the plaintiff and Tuxbury, signed by Tuxbury : " It is understood and agreed that any net profits made by me upon final disposition of the several parcels of land in Ward 16, Boston, conveyed to me by Edmund Durgin and the South Bay Company, after all outlays and expenses are paid me, with eight per cent. interest semi-annually on the cost of the same and my advances, are to be equally shared between me and said Durgin. It being further distinctly understood that all improve-ments, leases, sales or other disposition of said lands and premises

are to be made according to my judgment as to terms, parties and prices, and that said Durgin shall render all the aid in his power, for which and for all such aid heretofore rendered he is to receive no other compensation except a share of net profits, if any are made by Tuxbury on final closing of the business as above provided." The judge excluded it, and ruled that it was immaterial in this case. This was after the defendants had testified that they never had agreement or writing with Tuxbury in regard to the land, nor any deed or title thereto, and no evidence was offered by the plaintiff that the defendants had any such writing.

The defendant Somers testified that the parties named in the writ were partners with him in 1871, and it appeared that they were lumber dealers, but there was no other evidence as to the partnership or its business, or that the other partners named in the writ knew of the transaction in suit except as above stated. No question was, however, made at the trial as to the separate liability of the several defendants, and the attention of the judge was not called in any way to this question.

This was in substance all the evidence offered as to the terms of the contract between the parties. The other evidence in the case related to other questions of fact between the parties; and at the close of the evidence on both sides the defendants asked the judge to take the case from the jury, and to rule that upon the whole evidence the plaintiff was not entitled to recover. The judge refused so to rule, and submitted the case to the jury under instructions which were not otherwise excepted to.

The jury found for the plaintiff, and the defendants alleged exceptions.

*M. Williams, Jr. & C. A. Williams*, for the defendants.

*F. A. Perry*, for the plaintiff.

MORTON, J. This is an action to recover for services rendered in the sale of a lot of land in Boston. The evidence tended to show that Tuxbury, the owner of the land, had given a bond to convey it to Newman and Colby at the price of thirty-five cents per foot; that a considerable part of the price had been paid by Newman and Colby; that the defendants, in pursuance of an arrangement made with said firm and their creditors, took all their assets upon payment of a certain sum; that in order to avail themselves of the conditional interest they thus had in the land,

they were desirous of selling it, and employed the plaintiff as an agent or broker to find a purchaser, agreeing to pay him for his services all that he could get over thirty-five cents a foot. At the trial the defendants offered to show that at the time of the plaintiff's contract, he was interested in the land as owner or part owner, and did not disclose this fact to them, claiming that such concealment was a fraud upon them. But the court rightly ruled that the question of such ownership was immaterial. If this had been a case where there was a conflict of interests between the defendants and the owners of the land, or in which one of the duties of the broker was to negotiate with the owners, it would have been want of good faith for the plaintiff to conceal the fact that he was interested as part owner. His interest as owner would be inconsistent with the duties which he assumed by accepting the employment of the defendants. *Smith* v. *Townsend*, 109 Mass. 500, and cases cited.

But in the case at bar there was no such conflict of interests. Tuxbury was bound by his bond to convey the land for a certain price. The amount to be paid him was a mere matter of computation, and there was no occasion for any negotiation as to it. If a part of the duty of the plaintiff was to influence Tuxbury to give a deed to the defendants or to the purchaser he might procure, instead of making it to the obligees in the bond, the fact that he was interested with Tuxbury could not operate adversely to the defendants. It could not tend to induce the plaintiff to neglect their interests. If it appeared that he was authorized to sell the land for any price he might fix, and therefore to sell it for less than thirty-five cents a foot, it is possible that his interest as owner might induce him to sell at a low price for the purpose of thus receiving the balance due upon the bond, and thus might conflict with his duty to the defendants. But the fair inference from the bill of exceptions is that he was not authorized to sell for less than thirty-five cents a foot. At least the bill of exceptions does not show that he was thus authorized, and therefore it does not show that there was any conflict of interest which would make the failure to disclose his ownership a fraud upon the defendants. In this case his interest as part owner of the land is not inconsistent with a faithful performance of the duties he undertook in making the contract proved, and therefore the fact that

he did not disclose such interest ought not to avoid his contract and prevent him from recovering the compensation for his services which the defendants agreed to pay.

For the same reasons the agreement between the plaintiff and Tuxbury was properly excluded, the only effect of it, if it applied to this land, being to show that the plaintiff had an interest in it.

We are of opinion that, within the rule adopted in this Commonwealth, the letter of the defendants of July 12, 1872, was properly admitted in evidence. It contained admissions of independent facts pertinent to the issue on trial, which were admissible, though made in the course of a treaty of compromise. *Emerson* v. *Boynton*, 11 Gray, 395. *Dickinson* v. *Dickinson*, 9 Met. 471. *Gerrish* v. *Sweetser*, 4 Pick. 374. The court admitted it only so far as it contained independent statements of facts, instructing the jury that the offer of compromise in it was not admissible and was not to be considered by them. No exception lies to this ruling.

The defendants contend that there was no evidence that they were partners, or that the contract with the plaintiff was within the scope of the partnership business. It does not appear that this question was raised at the trial, or that any ruling of the court was requested thereon. But waiving this objection, there was competent evidence upon these points. The defendant Somers testified that he and the other defendants were partners in 1871; the firm took the assignment of the bond as security for a debt due it, and were thus the parties for whose benefit the plaintiff's services were rendered; they defended jointly and neither of the defendants disclaimed or denied their joint liability. There was competent evidence upon these and all the other issues involved in the case, and the court properly refused to rule, as requested by the defendants, that upon the whole evidence the plaintiff was not entitled to recover.

The only other question raised by the bill of exceptions is as to the alleged variance between the allegations and the proof. The first count alleges, as the consideration of the defendants promise, that the plaintiff was to sell, or procure a purchaser for the land. The plaintiff testified that he was to procure a deed from Tuxbury. But this did not make a variance. The pro-

curing the deed was one of the incidents or details of his emp.oy‧ ment, not an independent service which need be set out in the declaration. This question, however, is immaterial, because the objection does not apply to the second count which is upon an account annexed for services, and upon which a judgment might be rendered if there was a variance under the first count.

*Exceptions overruled.*