## ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

### WILLIAM M. TAYLOR vs. ROBERT SCHOFIELD.

Norfolk. December 11, 1905. — March 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Agency. Contract. Witness,* Cross-examination. *Practice, Civil,* Exceptions. *Evidence.*

One who was promised a commission in case he procured a purchaser for certain letters patent for a price named, in order to recover the commission, is not obliged to show that a contract of sale was carried out by an actual transfer of the patent. It is enough if he shows that he produced a customer who was able, ready and willing to pay the defendant's price and whom the defendant accepted.

The manner and extent of cross-examination are largely within the discretion of the presiding judge, and no exception lies to a proper exercise of this discretion, especially where it does not appear that the excepting party was in any way injured by the ruling of which he complains.

In an action to recover a commission which it was alleged the defendant had promised to pay the plaintiff if he procured a purchaser for certain letters patent for a price named, in which the plaintiff had shown that he procured a customer able, ready and willing to pay the defendant's price and that the defendant made a contract with this customer to sell him the letters patent at the price named which afterwards the defendant failed to perform, it appeared that the defendant for some time had been negotiating with various persons for a sale of his patent, and the defendant produced at the demand of the plaintiff a contract for the sale of the patent made by the defendant with a third person about a year before the making of the contract between the defendant and the customer produced by the plaintiff. The plaintiff was allowed to put this contract

in evidence against the objection and exception of the defendant. The jury returned a verdict for the plaintiff. *Held*, that the admission of the previous contract was erroneous, as it had no proper connection with the issue on trial and might have prejudiced the defendant both upon the question whether the contract with the customer procured by the plaintiff was absolute or conditional, and by leading the jury to think that the defendant had made and broken other agreements.

CONTRACT for $1,000, as a commission of twenty per cent on $5,000 for procuring a purchaser for certain letters patent, with a first count upon an account annexed and a second count upon an express oral contract. Writ dated July 15, 1904.

At the trial in the Superior Court before *Bell,* J. the jury returned a verdict for the plaintiff in the sum of $1,061; and the defendant alleged exceptions, raising the questions stated in the opinion.

*E. N. Hill,* for the defendant.

*H. T. Richardson,* for the plaintiff.

SHELDON, J. This was an action brought to recover a commission alleged to be due to the plaintiff for procuring a purchaser for letters patent owned by the defendant. The defendant admitted that he agreed to pay the sum claimed as a commission, but contended that he was to pay the commission only if he actually sold his patent to a purchaser produced by the plaintiff; and this was the main issue at the trial in the Superior Court.

It appeared that the contract was made verbally between the plaintiff and the defendant. The plaintiff testified that the defendant said that he should like to sell his patent, and that if the plaintiff could sell it for $5,000 he would give the plaintiff a commission of twenty per cent or $1,000. The defendant testified that what he told the plaintiff was that the machine was on the market and he should like to sell it; and that if the plaintiff brought a man to buy it and the defendant sold to that man, he would pay the plaintiff a commission. A few days later, the plaintiff wrote to the defendant a letter, dated July 29, 1903, and signed by him, reading as follows:

" Regarding our conversation of a recent date, anent your invention of the flax cleaning machine, I understood you to say that you would allow me twenty per cent commission on the sale of your patent, and that the probable price would be about five thousand (5000) dollars.

"I have been talking to parties interested to whom I think I can make a sale at this figure within a short time. Kindly write me as soon as possible if these figures are correct, as I wish to be sure before going any further.

"As I am acquainted with most flax Spg. concerns, I shall be glad to act as your agent at this figure if you will give me exclusive right to sell. If so, kindly write me to this effect. . . ."

The defendant answered this by a letter signed by him and addressed to the plaintiff, dated July 30, 1903, and reading as follows:

"I received your letter of inquiry and I read it very carefully, and what you say in regard to the 20 per cent is right, and the price of the machine is right, say $5000. But I would say here that should Mr. Sandford and you be talking of selling my machine to the same and one party and both claim a sale, it does not say that I shall have to pay $2000 from the $5000 realized, neither does it say that I would not allow you more than $1000. This is something that would have to be talked over with you, Mr. Sandford and myself. But should you bring up a new customer, one that has had no dealings with Sandford, you will realize your 20 per cent just as I said.

"As to the exclusive right to sell my machine it is a thing impossible for me to do. If you sell the machine No. 868421, you get the per cent, if some one else sells it you certainly do not want paying for what some one else has sold, but, as I say, should two salesmen come in the bargain who has been ordered to sell my patent, I will agree with the same making both parties satisfied."

There was evidence that the plaintiff did procure a customer, one Campbell, with whom the defendant entered into a written agreement by which Campbell was to buy the letters patent for $5,000; and that Campbell desired to fulfil this agreement, but that the defendant refused to do so, and afterwards sold his patent to some New York parties for $2,500 in cash and $25,000 in stock, they agreeing also to protect him from suits either by the plaintiff or by Campbell.

There was also a conflict of testimony as to whether the agreement between the defendant and Campbell was an absolute and binding agreement, the defendant contending and testifying that

it was not to become operative or have any force or effect until it had been approved by a third party, that this approval never was obtained, and that for this reason the agreement never had any force, and the plaintiff could not maintain the action. This question was submitted to the jury under instructions not objected to.

1. The bill of exceptions recites that the plaintiff asked the judge to rule that "if the plaintiff found a customer able, ready and willing to buy the defendant's patent for five thousand dollars, he is entitled to his commission, regardless of whether the contract was ever carried out between the defendant and Campbell"; that "when the plaintiff procured Campbell to purchase the patent at the price named by the defendant, his duty was at an end, and it is immaterial whether Campbell and the defendant made a contract, or whether if it was made it was performed"; and that "the plaintiff's commission was earned if he procured a customer ready and willing to purchase at the price named by the defendant, even if the defendant was only a part owner of the patent, or if he did not own it at all and could not get it." The exceptions state that these rulings were given in substance, and the defendant excepted. But it appears by the full report of the charge upon this question that the judge expressly submitted to the jury the question whether the contract was as stated by the plaintiff, or whether it was, as stated by the defendant, that the plaintiff was to have his commission only if he procured a customer and the defendant sold to that customer; and it is manifest that the plaintiff's requests were given only in case the jury found that the contract was as he contended. We think that the judge was right in ruling that if the contract was simply that the plaintiff was to have his commission if he sold the patent, then the plaintiff was not obliged to show that an actual transfer had been made, but that his duty was done when he produced a customer who was able, ready and willing to pay the defendant's price, and whom the defendant had accepted. *Fitzpatrick* v. *Gilson*, 176 Mass. 477, and cases there cited. This we understand to have been the effect of the instructions given by the judge and excepted to by the defendant. It follows that the defendant's request for a ruling that "upon all the evidence the plaintiff was not entitled to recover upon the claim that the con-

tract between the parties was that if the plaintiff procured a customer, the defendant was to pay the plaintiff a commission," was rightly refused.

2. We are of opinion that the limitation of the defendant's cross-examination of the plaintiff was within the discretion of the court. In substance, the defendant was required to exhaust the memory of the plaintiff as to what took place in the interview at which the agreement between the defendant and Campbell was signed, before asking him whether the defendant was willing to sign the contract, or whether he refused to sign it. But afterwards, in the same cross-examination, and after the witness's memory apparently had been exhausted, he said in answer to the latter question, upon its being repeated by the defendant, that he thought the defendant was unwilling to sign, but did not know that he absolutely refused. The defendant was allowed to ask further questions on the same subject, no further restrictions being put on the cross-examination except as above stated; and the entire conversation was testified to by both the plaintiff and the defendant. The manner and extent of cross-examination are largely within the discretion of the presiding judge. *Munro* v. *Stowe,* 175 Mass. 169, 172. *Watts* v. *Stevenson,* 165 Mass. 518, 520. *Barrett* v. *Murphy,* 140 Mass. 133, 144. *Pond* v. *Pond,* 132 Mass. 219, 222. *Commonwealth* v. *Kelley,* 113 Mass. 453. Nor does it appear that the defendant was in any way injured by the ruling of which he complains. *Bonnemort* v. *Gill,* 165 Mass. 493, 495.

3. It appeared that the defendant had been trying for some time to sell his patent, had been negotiating with various persons, and had made at least one contract for its sale, with a man named Pierce. This contract was called for by counsel and produced by the defendant. It was then put in evidence by the plaintiff against the defendant's objection and exception. It was dated November 12, 1902, and was an agreement by the defendant that he would assign to said Pierce this patent "upon the payment to me at any time when said . . . [Pierce] . . . shall have had an opportunity to prove the value of said patent, the sum of two thousand five hundred dollars, and the delivery to me of an agreement by the said Pierce to pay to me within ten months after said patent is so assigned the further sum of seven thou-

sand five hundred dollars"; with the further agreement of the defendant, if the patent was so assigned, to assign all his subsequent patents and inventions for the working of flax.

It is manifest that the admission of this agreement may have prejudiced the defendant, both upon the question whether his agreement with Campbell was absolute or conditional, and by leading the jury to think that he had made and broken other agreements than the two involved in this case. *Sullivan* v. *O'Leary*, 146 Mass. 322. The plaintiff argues that it was competent as showing that the reason assigned by the defendant for seeking to avoid the Campbell agreement was not the true one. But this argument is only stating in other words a way in which it may have injured the defendant; and it is somewhat difficult to see how an agreement made in November, 1902, could have any legitimate tendency to show a reason for seeking to avoid an agreement made with a different person in October, 1903. Such dealings with other persons cannot properly be admitted in evidence. There was absolutely nothing to connect this Pierce agreement with any of the issues in the case at bar. *Jordan* v. *Osgood*, 109 Mass. 457. It did not have any proper bearing on the defendant's good faith and credibility. *Holbrook* v. *Dow*, 12 Gray, 357.

For the sole reason that this agreement was admitted in evidence against the objection and exception of the defendant, the order must be

*Exceptions sustained.*