PERCY F. LELAND *vs.* ELBRIDGE C. BARBER.

Middlesex.     January 11, 1917. — September 13, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CARROLL, JJ.

*Agency,* Real estate broker, Commission.    *Contract,* Performance and breach.

In an action by a real estate broker to recover a commission for procuring a purchaser for the defendant's farm, it was *held,* that the judge, who at the request of the defendant had given a ruling that the plaintiff could not recover unless by the time agreed he produced "a customer ready, able and willing to enter into a binding, that is, written, contract to take the property," was right, under the circumstances disclosed by the evidence, in modifying the ruling by stating that he did not intend to rule "that the actual physical presence of the customer at the time and place was necessary."

It is not a universal rule that a real estate broker cannot earn a commission for procuring a purchaser for his customer's land without obtaining a binding contract signed by the purchaser. The signature of the purchaser is only a condition precedent to the payment of a commission when it is made so expressly by the broker's contract of employment or such a condition fairly is to be implied from that contract.

CONTRACT to recover $435 as a commission for services as a real estate broker in procuring a purchaser for the defendant's farm in Framingham and Ashland. Writ dated August 7, 1915.

In the Superior Court the case was tried before *Morton, J.*, without a jury. The facts as found by the judge are stated in the opinion. At the close of the evidence the defendant asked the judge to make the following rulings:

"1. That the plaintiff cannot recover unless before noon on Tuesday, August 3, 1915, he produced to the defendant a customer ready, able and willing to enter into a binding, that is, written, contract to take the property.

"2. That the plaintiff cannot recover unless by noon on Tuesday, August 3, 1915, he was able to and did put the defendant in a position where the defendant could by acceptance of an offer or otherwise have a purchaser legally bound to take the property.

"3. That the plaintiff cannot recover unless by noon on Tuesday, August 3, 1915, the defendant either (1) had a valid and binding contract by some purchaser to take the property or else (2) was responsible by his own refusal to proceed or in some other way for not having such a contract. ·

"4. That the defendant was entitled on noon Tuesday, August 3, 1915, either to have a good contract for the sale of his property through Mr. Leland or to be free to sell to some one else."

The judge refused to make the second, third and fourth of these rulings, stating that he interpreted these requests as calling for a ruling that the plaintiff was under a legal obligation to present to the defendant a legal, binding contract to purchase, signed by the customer; but the judge found and ruled that such was not the intention of the parties. The judge made the ruling numbered one, stating that he did not intend to rule thereby that the actual physical presence of the customer at the time and place was necessary. The defendant excepted to the judge's refusals to rule as requested and to the ruling as given upon the first request.

The judge found for the plaintiff and assessed damages in the sum of $435 with interest from the date of the writ. The defendant alleged exceptions.

*A. R. Graustein, (A. Berkowitz* with him,) for the defendant.

*C. C. Mellen,* for the plaintiff.

RUGG, C. J. This is an action to recover a commission on a sale of real estate. It was tried before a judge of the Superior Court, who found the facts and made a finding for the plaintiff. These facts must be accepted as true, for they are supported by the

evidence, and the contract between the plaintiff and the defendant, being oral, can be ascertained only from the testimony. The material facts are these: "The plaintiff, who was a real estate broker, had the defendant's farm listed upon his books for sale for some time previous to July, 1915. . . . Some time later the plaintiff asked the defendant whether if Pitri would give $8,700 for the farm alone the defendant would sell to Pitri at that price, and the defendant said that he would give the plaintiff until noon the next day to see what he could do and would sell to Pitri for $8,700 and would pay a commission to the plaintiff." "It was not the understanding, nor was there any obligation on the part of the plaintiff to have a binding contract delivered by noon." "The plaintiff saw Pitri, and Pitri agreed orally to pay $8,700 and was ready, able and willing to buy the farm at that price. The plaintiff told the defendant, on the next day in the morning, that Pitri had agreed to buy for $8,700, and presented to the defendant an agreement in the ordinary form to sell the estate, for the defendant's signature, not signed, however, by Pitri. The defendant at the time made no objection to the fact that Pitri had not signed it, nor any suggestion of a deposit, but did desire to have his attorney pass upon the papers. The parties accordingly went to the attorney's office, but owing to engagements of the attorney did not see him until almost noon. At the interview in the attorney's office there was present also another customer. Reference then was made for the first time to a deposit and a signed agreement by Pitri. There was some discussion also between the attorney and the parties as to the possibility of the defendant being subject to a claim for a double commission. The defendant, because of fear of being exposed to a double commission, refused to sell to Pitri or to any one else, and left the room. Some weeks later he did sell to a third person. . . . He could have obtained from him on short notice a valid, binding contract to purchase at the price agreed upon, if he had not refused to sell."

The defendant presented three requests for rulings. The first, to the effect that there could be no recovery unless before noon of the day in question the plaintiff produced "a customer ready, able and willing to enter into a binding, that is, written, contract to take the property," was granted but without ruling that the actual physical presence of the customer at the time and place

was necessary. This modification was correct under the circumstances here disclosed.

The actual signature by the purchaser before noon of a binding obligation to buy was no part of the plaintiff's contract with the defendant.

This and the other requests for rulings also raise the question whether a broker can recover a commission without procuring a binding contract of sale. It is settled that in some instances he may, provided that is his agreement with the landowner. In the case at bar the owner did not ask for that kind of a binding contract, nor suggest that he wanted it at the time when he naturally might have been expected to speak of it, if that was what he desired. It is not a universal principle that a binding contract must be actually executed before the broker is entitled to a commission. The broker need not procure such a binding contract unless that is expressly stated or fairly implied in his agreement. *Fitzpatrick* v. *Gilson,* 176 Mass. 477. *Tombs* v. *Alexander,* 101 Mass. 255. *Willard* v. *Wright,* 203 Mass. 406. *Brilliant* v. *Samelas,* 221 Mass. 302. The other requests for rulings were refused rightly.

*Exceptions overruled.*