CALIXTE JUTRAS *vs.* EMILE BOISVERT et al.

Androscoggin.    Opinion December 17, 1921.

*When a real estate broker has complied with the conditions of the contract with the*
*owner, by producing to the owner a customer who is ready, willing and able*
*to buy at a specified price, upon terms satisfactory to the owner, and*
*the customer is accepted by the owner as such, he is entitled*
*to his commission, whether the customer changes his*
*mind and refuses to buy or not.*

In the instant case the plaintiff listed his property with the defendants, author-
izing them to advertise it for sale and "to find a purchaser at the price of three
thousand seven hundred dollars." The purchase price was presumed to
be in cash in absence of other terms. Subsequently, the owner changed the
terms first prescribed as to cash, to terms agreed upon between the owner
and the customer, part in cash and part by assuming an outstanding mortgage.

Such change or modification being made by the owner would not effect the rights
of the brokers to their commission. The seller accepted the customer as his
purchaser.

Later there was a further modification of terms, agreed to by the seller and the
customer, terms which it was admitted the purchaser was able to comply with.
The deal was not, however, consummated for the reason that the purchaser
changed his mind and refused to complete the transaction. There was no
valid contract of purchase signed by the buyer. These conditions did not
concern the brokers. The owner alone was concerned.

The right to compensation had become fixed before the changes and modifica-
tions were made by agreement between the seller and the purchaser.

This is an action in assumpsit for money had and received. The
plaintiff owned a house in Lewiston and listed it with defendants,
real estate brokers, at a stated purchase price and also stated com-
mission. Defendants procured a customer who paid to defendants
sixty dollars "to bind the bargain." Subsequently, the purchaser
changed his mind, after two changes and modifications had been
made in the terms of the purchase price agreed to by both the owner
and the purchaser, and forfeited the sixty dollars paid down, and
refused to consummate the deal.

The case was tried in the Lewiston Municipal Court, and plaintiff
excepted to the finding in favor of defendants, and the case was

certified to the Chief Justice under Private and Special Laws of 1871, Chap. 636, Sec. 10. Exceptions overruled.

Case is fully stated in the opinion.

*Louis J. Brann,* for plaintiff.

*H. E. Holmes,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J.    This case was certified to the Chief Justice from the Municipal Court of Lewiston under Private and Special Laws, 1871, Chap. 636, Sec. 10, and is before us on plaintiff's exceptions to a judgment for the defendants rendered by the Judge of that court on the following agreed statement of facts:

"This is an action in assumpsit for money had and received. The defendants are real estate brokers in Lewiston. The plaintiff owned a house and land on Rosedale Street, Lewiston. In June 1920 plaintiff listed this property with defendants authorizing them to advertise it for sale and to find a purchaser at the price of three thousand seven hundred dollars. Defendants advertised it for sale in a Lewiston newspaper and took several people to see it. In the month of May 1921 they interested one George Sutton in the property. The defendants told the plaintiff that they had interested Sutton and the plaintiff told defendants that he would sell the property for three thousand eight hundred dollars, defendants to have a commission of one hundred dollars. May 26, 1921 the defendants brought Sutton to see the plaintiff. Sutton, plaintiff and defendants had a conversation together in which Sutton agreed to buy the property at the price of three thousand eight hundred dollars, to pay seventeen hundred dollars in cash, and assume a mortgage which was on the property. Then in the presence of plaintiff, Sutton gave defendants sixty dollars, the understanding among them being that it was 'to bind the bargain,' and defendants wrote and handed to Sutton a receipt in the following words:

'May 26, 1921.

Received of Jorge Suttun sixty dollars on property.    $60.

BOISVERT & BEAUCAGE'

"There was no other written agreement made. The next day Sutton entered upon plaintiff's land, with plaintiff's permission, and planted some potatoes and other vegetables. Sutton owned a house and land on Sabattus Street, Lewiston, which he was bargaining to sell at the time. He expected to make the payment of seventeen hundred dollars with the money that he would receive from the sale of his Sabattus Street property. A few days after May 26th he had a telephone conversation with the plaintiff in which he told plaintiff that he could not pay seventeen hundred dollars cash down, but could pay one thousand dollars. Plaintiff agreed to take one thousand dollars. On June 2nd there was a telephone conversation, partly between Sutton and plaintiff and partly between Sutton and defendant, Beaucage, the plaintiff and defendant, Beaucage, being together at the time at plaintiff's house, in the course of which Sutton told plaintiff that he did not want to buy plaintiff's property, giving as a reason that he did not like to pay interest on so much money; but he told defendant, Beaucage, during the same conversation that his children did not like plaintiff's house, that his daughter 'cried all night,' and that he must refuse to buy the place in order to 'keep peace in his family,' and that he would forfeit the sixty dollars that he had paid. Sutton then bought a place on Homefield Street, Lewiston.

"It is agreed that Sutton had one thousand dollars in cash which he could have paid to plaintiff; and it is agreed that his real reason for not completing the transaction was that his children did not like the place and he did not want to displease them. It is agreed that the plaintiff in no way prevented the sale but was willing to complete the trade.

"Afterwards plaintiff demanded of defendants the sixty dollars, which defendants refused to give him, claiming it as a part of their commission of one hundred dollars, claiming that they had fully performed their work as real estate brokers when they brought Sutton to the plaintiff. The plaintiff, however, claims that the sixty dollars belongs to him and that defendants have not earned their commission because the sale was not consummated."

The precise question of law raised under these facts is whether a broker employed to find a purchaser for real estate is entitled to his commissions provided he produces to the owner a customer who is ready, willing and able to buy at the specified price, upon terms

satisfactory to the owner, and the customer is accepted by the owner as such, even though he subsequently changes his mind for personal or family reasons and refuses to purchase, while the owner remains ready and willing to sell.   The answer to this question depends upon the precise contract made between the owner and the broker and what the broker is bound to do in order to be held to have complied with it.

In the case at bar the plaintiff listed his property with the defendants, authorizing them to advertise it for sale and "to find a purchaser at the price of three thousand seven hundred dollars." These are the express words of the agreement and "to find a purchaser at the price of three thousand, seven hundred dollars" means that the defendants were to procure a party who was ready and willing and able to purchase at that price.   Further this was presumed to mean a cash sale in the absence of other terms.   *Grant* v. *Dalton*, 120 Maine, 350.   The price was subsequently changed to three thousand, eight hundred dollars.   The brokers had no power in the first instance, without authority from the owner, to change the terms first prescribed as to cash, to the terms agreed upon between the owner and the customer, part in cash and part by the assumption of an outstanding mortgage.   The owner, however, had that power because he was dealing with his own property and he could vary the terms as he saw fit, and such modification would not deprive the brokers of their commission.   The rule recognizing this element is stated in a very recent case as follows:   "The plaintiffs to be entitled to a commission in this case were obliged to produce a customer who was prepared to pay cash or who offered and was prepared to purchase on terms satisfactory to the defendant."   *Grant* v. *Dalton*, supra, and see *Hanscom* v. *Blanchard*, 117 Maine, 501, 503.

The brokers in the case at bar brought one Sutton to the plaintiff, who was ready, willing and able to take the property on terms satisfactory to the plaintiff, that is, for seventeen hundred dollars in cash and the assumption of the outstanding mortgage.   This modification of the original cash terms being agreed upon between the seller and purchaser, the seller accepted the customer as his purchaser.   When that was done the brokers had fulfilled all the requirements of their contract and were entitled to their commission.   Later there was a further modification, to the effect that the customer should pay one thousand dollars in cash instead of seventeen hundred.   This was

agreed to by the seller and it is admitted that Sutton had the one thousand dollars in cash with which he could have met the payment.

The deal was not consummated by the execution, delivery and acceptance of a conveyance and the payment of the consideration, nor was any valid contract of purchase signed by the buyer, but neither of these acts concerned the brokers. No duty was imposed upon them in relation thereto by their contract. These were matters entirely for the owner to consider and determine, and if he saw fit to take the purchaser's word and to demand no valid written agreement the responsibility rested entirely upon him.

Under the agreement in this case the brokers were not obliged to effect a sale, as in *Ward* v. *Cobb*, 148 Mass., 518, which means in this connection either an actual conveyance or a valid written contract to buy, *Rice* v. *Mayo*, 107 Mass., 550, *Veazie* v. *Parker*, 72 Maine, 443, but they were only bound to find a purchaser as already defined. When they had found such a purchaser and had brought him to the owner and those two had agreed upon modified terms which were satisfactory to the seller, the seller had accepted that party as the purchaser whom he had authorized the brokers to find, and he cannot repudiate his agreement to pay commissions simply because no written agreement was signed binding the purchaser. The agreement contained no special stipulation that the brokers' commission was conditional upon the making of an enforceable agreement between seller and customer, *Harrington Co.* v. *Waban Rose Conservatories*, 222 Mass., 372. "It is no part of the brokers contract to see to the making of the contract between his principal and the customer found by him." *O'Connell* v. *Casey*, 206 Mass., 520-529; *Taylor* v. *Schofield*, 191 Mass., 1; *Willard* v. *Wright*, 203 Mass., 406; *Brilliant* v. *Samelas*, 221 Mass., 302; *Leland* v. *Barber*, 228 Mass., 144.

As was said by the court in an oft-cited case: "When the broker has produced a customer his duty is at an end; so far as his rights or his duties are concerned it is immaterial whether a contract is or is not made, or if made, whether it is or is not performed. The broker's right to a commission is no more dependent upon or affected by the fact that a contract is or is not drawn up and executed, than it is by the fact that the contract, if drawn up, is or is not carried into effect. Making or not making a contract with the customer produced, enforcing or not enforcing a contract, if made, are matters for the broker's principal to do or not to do as his ability and inclination

determine.   They are matters with which the broker is not concerned, and on which his right to a commission is not dependent." *Fitzpatrick* v. *Gilson*, 176 Mass., 477, and see *Goodnough* v. *Kinney*, 205 Mass., 203, to same effect.

The case at bar falls within these well settled principles of law. For family reasons the customer declined to carry out the oral contract which he had made with the seller, (the enforceability of which we do not decide) but that was a matter between the seller and the buyer, not between the seller and the brokers.   Their right to compensation had already become fixed.   The customer had paid to the defendant brokers sixty dollars to bind the bargain, with the knowledge and consent of the plaintiff.   The plaintiff seeks to recover this in this action for money had and received.   The defendant retains it as a part of the one hundred dollars commission to which he claims to be entitled and in this position he is legally justified.

The court below so ruled and the entry must therefore be,

*Exceptions overruled.*