ANTHONY IVAS *vs.* TIMOTHY J. REARDON.

Middlesex.　November 15, 1928. — December 18, 1928.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Broker*, Commission.

At the trial of an action by a real estate broker for a commission for procuring a purchaser of a garage of the defendant, it was not disputed that the plaintiff was hired by the defendant to secure a customer. There was evidence, which was controverted, that the plaintiff procured a customer ready, able and willing to purchase the property on the terms agreed upon, and brought him to the defendant, in whose presence the customer signed two copies of an agreement to purchase on those terms, the agreement then being read to the defendant, "and

that he took the agreements with him." The defendant never signed them. There was some evidence that a deposit required by the terms of the agreement to be made on the date the agreement was dated was not made until two days after that date, although the parties had agreed to meet the next day to complete arrangements. The defendant, when informed by the plaintiff that the deposit had been made, refused to go further with the transaction, stating to the plaintiff as his reason merely that the price was too low and that he had changed his mind, and, "I do not care for commission. If you are entitled I will pay you, but . . . I won't sell my garage for that price." There was a verdict for the plaintiff. *Held*, that

(1) There was evidence warranting a finding that the plaintiff had fully performed his contract and that the purchaser procured by him was ready, able and willing to buy according to the contract and the terms demanded by the defendant;

(2) It was not necessary for the plaintiff to take part in the final arrangements; the mere fact that the parties were to meet the next day and conclude the transaction and that the buyer's representative failed to appear with the money, but two days later the buyer was prepared to complete the purchase, did not deprive the plaintiff of his right to recover;

(3) A finding was warranted that the defendant's withdrawal of his willingness to carry through the transaction with the purchaser came after performance by the plaintiff, too late to deprive him of his commission;

(4) The verdict for the plaintiff was warranted.

CONTRACT by a real estate broker for a commission. Writ dated June 29, 1925.

In the Superior Court, the action was tried before *Brown*, J. Besides the evidence stated in the opinion, the plaintiff testified, respecting the deposit to be made by the purchaser, "that the buyers signed two copies of the agreement and that he witnessed their signatures in Reardon's [the defendant's] presence; that he took the two agreements with him; that he was to collect the deposit and bring it over to Reardon; that nothing else was said about the deposit; that he explained to Reardon that they had bank books and that they would assign the bank books to Ivas and that he would bring in his own check to Reardon when he collected from the buyers." The agreement with the purchasers was not signed by the defendant. It bore the date June 24, 1925. The recital therein as to deposit was that of the purchase price of $50,300, $2,000 "have been paid this day."

A motion by the defendant that a verdict be ordered in his favor was denied. There was a verdict for the plaintiff in the sum of $1,604.55. The defendant alleged exceptions.

*W. W. Clarke,* (*C. J. Muldoon* with him,) for the defendant.

*E. M. Dangel,* (*C. T. Bahn* with him,) for the plaintiff.

CARROLL, J. This is an action of contract to recover a real estate broker's commission. At the close of the evidence the defendant moved for a directed verdict. The motion was denied and the defendant excepted. The jury found for the plaintiff.

There was evidence that the defendant employed the plaintiff to procure a buyer of his garage at the price of $50,000, and expected to pay the plaintiff a commission; that a written contract was drawn by the plaintiff in accordance with the oral agreement, and, in the defendant's presence, was signed by Kleavas and Zanis, who were to buy the property; that it was read to the defendant.

The plaintiff testified that the defendant and the buyers agreed on a price of $50,000 for the garage and $300 for the cash register; that $8,000 was to be paid in cash, a deposit of $2,000 and $6,000 when the title passed; that the defendant was to secure a mortgage of $25,000 "for any length of time"; that the balance of the purchase price was to be secured by a second mortgage; and that the parties were to meet at the registry of deeds at two o'clock on June 24. The defendant testified "that Ivas was to go to the registry and call Reardon from the registry; that he did not see Ivas all the next day nor did he see him the following day which was June the twenty-fourth"; that on June 26, Ivas called up and said he had the deposit. The plaintiff further testified that the purchasers assigned to him bank books for the sum of $2,000; that on the morning of June 26 he saw the defendant at the garage and said to him: "At last I got the deposit and here is the check and agreements," and the defendant said, "I won't sell for that price now. I agreed too low last night. I changed my mind. I want $60,000 and $10,000 cash."

There was evidence that Kleavas and Zanis were ready,

able and willing to purchase the property on the terms agreed upon. It was not disputed that the plaintiff was hired by the defendant to secure a customer.

The defendant, however, contended that the agreement of sale was not in accordance with the terms of the contract as agreed upon; that the first mortgage was to run for one year; that he was to be paid $10,000 in cash, whereas the written agreement provided that, if the mortgagors were unable to pay the first mortgage, the defendant was "to replace such mortgage during the life of the second mortgage"; and that the cash payment according to the written agreement was $8,300. The plaintiff's evidence was to the contrary, and tended to show that the written contract was in accordance with the understanding of all the parties. It was therefore a question of fact for the jury, and, if the jury believed the plaintiff's evidence, they could find that the purchasers were ready, able and willing to buy according to the stipulated terms of the agreement made with the defendant. *Fitzpatrick* v. *Gilson*, 176 Mass. 477. *Buono* v. *Cody*, 251 Mass. 286.

The defendant contends that he could withdraw the offer of sale at any time before acceptance by the prospective purchasers. *Des Rivieres* v. *Sullivan*, 247 Mass. 443. It was, on the evidence, a question of fact for the jury to decide whether the offer was withdrawn before it was accepted and the acceptance made known to the defendant. The plaintiff introduced testimony that he had performed his contract: that he brought to the defendant customers who were ready, able and willing to buy on the defendant's terms and who had accepted the defendant's offer. *Wellington* v. *Apthorp*, 145 Mass. 69, 73. *First National Bank* v. *Watkins*, 154 Mass. 385, 387. *Des Rivieres* v. *Sullivan, supra*, page 446.

The plaintiff testified that on June 24 the agreement was drawn up; that the buyers "signed two copies"; that he witnessed the signatures in the defendant's presence; that he read aloud the agreement and delivered one copy to the defendant; that "he took the two agreements with him"; that "everything was understood as they had agreed the previous night"; that he asked the defendant "if I [the

witness] got the deposit if it would be too late to bring it that night"; that the defendant replied, "you could bring it in tomorrow at the registry of deeds"; that the witness "said, what time would be the time you want to see me tomorrow? and Reardon said, 'About two o'clock.'" On this evidence the jury could have found that the plaintiff produced a customer ready, able and willing to buy, and the terms were accepted and agreed to. The fact that the parties were to meet the next day and conclude the transaction and that the buyers' representative failed to appear with the money, but on the twenty-sixth the buyers were prepared to complete the purchase, did not deprive the plaintiff of his right to recover. It was not necessary for him to take part in the final arrangements. *Fitzpatrick* v. *Gilson, supra. Willard* v. *Wright*, 203 Mass. 406. In addition to this, the written agreement provided that the premises were to be conveyed on or before July 15, 1925. When the plaintiff again met the defendant and informed him that everything was in readiness to complete the bargain, the defendant did not object because the buyers' representative was not present at the registry of deeds; he refused to go on with the trade solely, according to the testimony of the plaintiff, because he (Reardon) had changed his mind and wanted $60,000, with $10,000 cash; and he further stated, "I do not care for commission. If you are entitled I will pay you, but . . . I won't sell my garage for that price." In these circumstances the defendant could not on June 26 deprive the plaintiff of his commission. He had fully performed his contract and the purchasers were ready, able and willing to buy according to the contract and the terms demanded by the defendant.

*Exceptions overruled.*