**In re Robert Nelson TURNER, Phyllis J. Turner d/b/a Turner's Floor Coverings, Debtors.**

**Robert Nelson TURNER, Phyllis J. Turner, Plaintiffs,**

**v.**

**Wanita A. BURTON d/b/a Waterfall Real Estate, Peter C. Fessenden, Trustee, Defendants.**

Bankruptcy No. 282–00179.
Adv. No. 282–0250.

United States Bankruptcy Court, D. Maine.

April 28, 1983.

Walter E. Brown, Jr., Brown & Winston, Lewiston, Me., for plaintiffs.

Dennis M. Patterson, Bumgardner & Field, Brunswick, Me., for defendant Burton.

Peter C. Fessenden, Brunswick, Me., for defendant Trustee.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The debtors, Robert and Phyllis Turner, request the court to order Wanita Burton, a real estate broker doing business as Waterfall Real Estate, to turn over to them $2,500 held by her pursuant to a real estate contract. They also seek to recover $4,000, which the trustee is withholding from the proceeds from the sale of their house. The court concludes that, under the terms of the real estate contract, Burton is entitled to retain the $2,500 and that the debtors are entitled to all but $1,500 of the $4,000 in proceeds as part of their homestead exemption.

On November 2, 1981 and May 17, 1982, the debtors entered into Exclusive Right to Sell Agreements with Waterfall Real Estate for the purpose of finding a buyer for their house. Under the terms of the agreements, Waterfall agreed to retain earnest money deposits from prospective purchasers in a special escrow account. The agreements stated that if a purchaser forfeited the deposit it would be divided equally between the debtors and Waterfall.

On January 9, 1982, the debtors signed a contract for the sale of their house to John and Kathryn Sulik. The contract provided for the division of forfeited deposits between the debtors and Waterfall. The Suliks paid a total of $8,000 to Waterfall as escrow agent. Pursuant to the terms of the real estate contract, $1,000 was paid out of the escrow account to the debtors on January 1, 1982, February 18, 1982, March 18, 1982, and April 20, 1982. On April 27, 1982, the debtors filed for relief under chapter 7 of the Bankruptcy Code. Subsequently, the Suliks notified Waterfall that they would not complete the purchase. On May 7, 1982, $4,000 remained in the escrow account. Waterfall distributed $1,500 to the debtors and retained $2,500.

On September 1, 1982, the debtors' house was sold to other purchasers for $59,000. After the outstanding mortgages, real estate taxes, broker's commission, and other expenses were deducted, $10,294.74 in proceeds remained. Although the trustee does not dispute that the debtors are entitled to a homestead exemption, he withheld $4,000 of the proceeds.

The debtors argue that the $2,500 which Burton retained was property of the estate and should be turned over to them. On October 22, 1982, the debtors amended their complaint to join the trustee as a defendant. They argue that the $4,000 which the trustee withheld is exempt property and should also be turned over to them.

Section 543(b)(1) provides: "A custodian shall—deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case. . . ." Section 543 requires the turnover of "property of the debtor." The Bankruptcy Code, however, does not provide rules for deciding whether a debtor has an interest in property. 4 *Collier on Bankruptcy* ¶ 541.02[1] (L. King 15th ed. 1982). The nature and extent of a debtor's interest in property are determined by state law. *Id.; see In re Shea Realty, Inc.,* 21 B.R. 790, 791 (Bkrtcy.D.Vt.1982); *James B. Nutter & Co. v. Taylor (In re Taylor),* 21 B.R. 179, 180 (Bkrtcy.W.D.Mo.1982).

Under Maine law, the rights of an owner and a real estate broker to an earnest money deposit are determined by the contract between the owner and the broker. *Jutras v. Boisvert,* 121 Me. 32, 33, 35, 115 A. 517, 516 (1921); *see also Labbe v. Cyr,* 150 Me. 342, 347, 111 A.2d 330, 333 (1954) (broker's right to commission). In *Jutras,* the Maine Supreme Judicial Court stated that the relative rights of the parties depend "upon the precise contract made between the owner and the broker and what the broker is bound to do in order to be held to have complied with it." 121 Me. at 35, 115 A. at 516.

The contract between the debtors and Waterfall provided that upon default the purchaser's earnest money deposit would be divided equally between them. Thus, under state law and the terms of the contract, the $2,500, which the debtors are seeking to recover from Waterfall, was never "property of the debtor" and, therefore, could not be subject to a section 543(b)(1) turnover order.[1] Waterfall is entitled to retain the $2,500.

In their schedule of exempt property, the debtors claimed their house and land at a value of $15,000 as exempt pursuant to section 522(b) of the Bankruptcy Code and title 14, section 4422(1) of the Maine Statutes. 11 U.S.C.A. § 522(b) (1979); Me.Rev. Stat.Ann. tit. 14, § 4422(1) (Supp.1982–1983). The trustee has not objected to this exemption. However, the trustee withheld $4,000 from the $10,294.74 which the debtors would otherwise have received under their homestead exemption. The trustee claims that the $1,500, which the debtors received after they filed their petition, is property of the estate and should be set off against the $4,000.

1. Under the terms of the contract, Waterfall may have been entitled to $4,000 instead of $2,500; however, Waterfall stipulated that it would settle for $2,500.

Section 541(a)(1) provides: "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such an estate is comprised of the following property, wherever located: ... all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (1979). At the commencement of this case, the debtors had a contingent interest in the earnest money deposit in the escrow account maintained by Waterfall. This contingent interest became property of the estate under section 541(a)(1) when the debtors filed their petition. When the Suliks forfeited the deposit after the petition was filed, Waterfall should have turned over the $1,500 to the trustee under section 543(b)(1), rather than to the debtors. Because the debtors received and retained the $1,500, they have, in effect, received $1,500 of their homestead exemption. Thus, the trustee is entitled to keep $1,500 of the $4,000 which he is withholding; the remainder of the $4,000 should be turned over to the debtors as part of their homestead exemption.

An appropriate order will be entered.