CALVIN HOSMER, STOLTE COMPANY *vs.* PARAMOUNT CONE COMPANY, INC.

SAME *vs.* NATIONAL PASTRY PRODUCTS CORPORATION.

Suffolk.   May 16, 1933. — February 14, 1934.

Present: PIERCE, WAIT, FIELD, & LUMMUS, JJ.

*Evidence*, Competency, Materiality. *Contract*, Validity, Performance and breach. *Damages*, Liquidated, In contract. *Waiver*.

At the trial of an action for breach of a contract of sale of flour, there was evidence that the plaintiff, the seller, delivered a part of the flour and was paid therefor, that the remainder was not taken by the defendant, and that finally the plaintiff sent the defendant a notice of cancellation of the contract. Evidence was admitted of a conversation between the parties at about the time when such notice was sent, at which propositions were made by the defendant to dispose of the controversy, but such evidence was admitted on the issue of when, if ever, cancellation of the contract was first broached and a refusal made to accept further deliveries of the flour, and not as an admission of liability by the defendant; and the trial judge instructed the jury that an offer of compromise was not "competent evidence that a cause of action exists," but that statements made in such an offer which in themselves had a bearing on a material issue were competent for the jury's consideration. *Held*, that
    (1) The instructions were correct;
    (2) No prejudice to defendant nor reversible error appeared in the admission of the evidence of the conversation between the parties.
There was further evidence at the trial above described that a provision of the contract of sale was that the plaintiff was given the right to cancel the contract in certain circumstances, in which event the

defendant was to pay the plaintiff twenty-five cents per barrel "plus or minus the market difference"; that the defendant on a certain date, when the market price of flour was lower than the contract price, definitely refused to take the remainder of the flour; and that the notice of cancellation was sent on that date. *Held*, that

(1) It was proper to exclude as immaterial a question as to the prices at which the plaintiff disposed of the remaining flour, the time of such disposal not being stated in the question: the market price at the time of the plaintiff's cancellation was alone material:

(2) If the defendant definitely refused to accept the remainder of the flour, no tender thereof by the plaintiff was necessary as a preliminary before the commencement of the action, nor was the defendant entitled to a reasonable time beyond the date of refusal for taking the flour;

(3) The plaintiff was entitled to recover as damages the difference between the market value of the remaining flour, at the time when the contract was cancelled, and the contract price, plus twenty-five cents per remaining barrel; there was no penalty, but an agreed reasonable liquidation of possible charges.

The evidence at the trial above described warranted a finding that the plaintiff did not waive his right to cancel the contract.

TWO ACTIONS OF CONTRACT. Writs dated October 13, 1931.

The actions were tried together in the Superior Court before *Greenhalge*, J. Material evidence and exceptions saved by the defendants are described in the opinion. The judge's charge on the question of damages was to the effect that the plaintiff could recover not only the difference between the market value of the remaining flour at the date of the breach and the contract price therefor, but also twenty-five cents per barrel if the plaintiff had not waived the provision of the contracts with respect thereto. There were verdicts for the plaintiff in the sums, respectively, of $1,630.08 and $737.28. The defendants alleged exceptions.

*S. Markell*, (*L. W. Black* with him,) for the defendants.

*E. L. Twomey*, for the plaintiff.

WAIT, J. These are actions for breach of contract to take and pay for flour. They are before us, after verdicts for the plaintiffs, on exceptions claimed by the defendants to rulings in admission and rejection of evidence; to denials of motions for directed verdicts; to refusal of requests for instructions to the jury; and to portions of the charge.

There is nothing in the exception to denial of motions for

directed verdicts. The evidence was·conflicting. We find no indisputable evidence binding upon the plaintiff which precluded recovery. In such a state of affairs the issues of fact were for the jury.

Stated succinctly, there was evidence as follows: On February 26, 1930, the defendant Paramount Cone Company, Inc. ordered from the plaintiff two thousand barrels of flour, at $5.48 per barrel f. o. b. wharf, Boston, Massachusetts. The flour was to be shipped from Oregon during the season of 1930, on written shipping orders. If the buyer failed to give shipping orders in time, the seller could ship at its own convenience or cancel the contract; whereupon the buyer should pay to the seller twenty-five cents per barrel plus or minus the market difference. This contract was oral. The parties had dealt together before. The plaintiff's method of business was to buy flour at the mills in Oregon, ship it thence to Boston in vessels arriving at Commonwealth Pier weekly, and deliver such number of barrels to its customers at the pier as they would take. It never allocated in advance any specific barrels to any particular account. It did not require written shipping orders; but, when it learned of an approaching arrival, called its customers by telephone and inquired of the purchaser how many barrels were wanted, or told him how many it purposed delivering to him. Any barrels not delivered were disposed of as rapidly as possible by "spot sales" to avoid storage expense and wharfage charges. Where "spot sales" were made, an equal number of barrels was ordered from the mills to cover the sales. In this case, the plaintiff ordered two thousand barrels at the mills, and up to June 26, 1930, delivered to the Paramount Cone Company, Inc., four hundred sixty-six barrels. It was paid the agreed price. This left fifteen hundred thirty-four barrels uncalled for. The plaintiff did not then tender the balance, demand that the balance be then taken, or state that it cancelled the contract. But, shortly after, the Paramount Cone Company, Inc., was told it must take the flour as the plaintiff wished to close up the contract. It replied it would take it as fast as it could use it. The

market price of flour had fallen. Before November 4, 1930, two hundred thirty-eight barrels more were delivered and paid for, leaving twelve hundred ninety-six barrels undelivered. About November 4, 1930, the plaintiff, pressing the Paramount Cone Company, Inc., to take the flour uncalled for, negotiated with the National Pastry Products Corporation, a holding company with which the Paramount Cone Company, Inc., and other companies manufacturing ice cream cones, who also purchased flour from the plaintiff, were associated. To lessen the immediate loss, the plaintiff made a contract for twelve hundred ninety-six barrels of the flour with the National Pastry Products Corporation on substantially the same terms as that of February 26 except that the price was $3.93 per barrel; and agreed that deliveries should be taken one half on the balance of twelve hundred ninety-six barrels on the February contract at $5.48, and one half on the twelve hundred ninety-six barrels on the November contract at $3.93. Deliveries were so made until on July 6, 1931, there remained five hundred seventy-six barrels uncalled for upon each contract. All flour taken was paid for at the agreed prices. The contract of November 4, 1930, was in writing. On October 8, 1931, notices of cancellation were sent to the defendants after a conference between representatives of the plaintiff and of the defendants and other cone companies affiliated with them. There was conflict in the evidence with regard to what took place at the conference. These actions at law followed.

The exceptions relating to evidence need not be sustained. It is true that evidence was admitted of propositions made to dispose of the controversy by the defendants; but it was merely of conversation at the interview of October, 1931, introduced on the issue of when, if ever, cancellation of the contracts was first broached and a refusal made to accept further deliveries of the flour. We are unable to see any prejudice resulting to the defendants. It was not used as an admission of liability. The judge did not refer to the jury the decision whether the statement was an offer of compromise. That was for him to determine. He in-

structed the jury that an offer of compromise was not "competent evidence that a cause of action exists"; but that statements made in such an offer which in themselves had a bearing on the situation between the parties — a material issue — are competent for the jury's consideration. In this he was right. *Durgin* v. *Somers,* 117 Mass. 55. *Draper* v. *Hatfield,* 124 Mass. 53, 56. Wigmore, Evidence (2d ed.) § 1061. Even had the admission been technically wrong, it does not amount to reversible error here.

The judge, of his own motion, excluded as immaterial the question: "Now, can you tell us at what prices you disposed of any of the flour?" The bill of exceptions does not make clear to what time the question referred. There was other evidence, to which no exception was claimed, that the price per barrel f. o. b. the wharf at Boston about June 1, 1931, was $3.50; on July 6, 1931, $3.25; on or about October 8, 1931, $2.90 plus three cents wharfage charge. By the terms of the contracts, as the jury could find, damages if the contracts were cancelled were to be twenty-five cents per barrel remaining undelivered plus or minus the market difference. The judge was right in regarding the price at which the plaintiff disposed of flour at the wharf as immaterial. The plaintiff never allocated any specific barrels to the defendants. No title in any undelivered flour passed to the defendants. The market price at cancellation, not any particular prices obtained at varying times, was alone material.

Manifestly there was evidence warranting findings that the plaintiff never waived nor relinquished its right to cancel the contracts whenever the defendants definitely refused to take flour under them, and that no such definite refusal was made until October 8, 1931. Requests for instructions predicated on other findings of fact could properly be refused, so long as the jury was sufficiently instructed in regard to the basic law of the case. *Porter* v. *Harrington,* 262 Mass. 203, presents different facts and a different finding with regard to waiver. It is not controlling. The charge covered the law generally applicable. No tender of flour was necessary as a preliminary to action. The defendants

were not entitled to a reasonable time beyond October 8, 1931, for taking the flour, if on that day they definitely stated they would take no more, as the jury could find they did.   There was no error in dealing with the requests for instructions.

The instructions on damages were correct.   The jury could find as terms of the contracts that a right to cancel arose on definite refusal to take the flour, and that, if cancellation took place, the defendants were to pay twenty-five cents per barrel not delivered plus or minus the difference between the market price per barrel at the time of cancellation and the contract price.   There was no penalty; but an agreed reasonable liquidation of possible charges.

*Exceptions overruled.*