Banks, J.
This is an action in contract to recover a $20,000.00 deposit paid by the plaintiffs, Gilbert E. Bortone and Gilbert F. Bortone (the “Buyers”), pursuant to an agreement for the purchase and sale of real estate owned by Charles LeConti and defendant Emma LeConti (the “Seller”). The real estate consisted of five parcels of land with the buildings thereon, including a commercial auto repair facility known as the Summer Street Garage, in Watertown, Massachusetts.
On April 30,1987, the day of the closing, the buyers refused to proceed with the purchase of the properties. The seller now claims that such refusal constituted a breach of the parties’ agreement entitling the seller to retain the deposit in question as liquidated damages. Conversely, the plaintiff-buyers allege that their performance under the contract was excused by the seller’s failure to satisfy a condition precedent to the sale, which resulted in the seller’s breach of the agreement and the buyers’ right to a return of their deposit and all interest thereon.[2]
The sole issue on this appeal is whether the seller satisfied the following condition precedent to the realty sale which is set forth in Rider A, Para. 6(b) of the parties’ purchase and sale agreement:
6. The Seller represents that on or before the date of delivery of the deed to the Buyer in accordance with the terms of said Agreement... (b) That they shall give to the Buyer a certificate that the premises are not in violation of Chapter 21E of Massachusetts General Laws Annotated.”[3]
Byway of compliance with the requirements of Para 6 (b), the seller delivered to the buyers a document entitled “Site Report Relative to Hazardous Material,” which was dated April 29,1987 and signed by a registered, professional engineer for the firm Environmental Testing Service. The record before this Division states that the site report “was presented in a form that is customarily used in the inspectional profes *160 sion.” At the end of the site report under the heading “Conclusions of the Inspection and Investigation,” the following is noted: an underground fuel oil tank is located on the property, but had been approved as “tight” by the Massachusetts D.E.Q.E.; waste oil stored in barrels on the site showed no evidence of spillage; and because there was no physical evidence of prior or present releases of hazardous materials, or the generation of hazardous waste on the site, the inspector took no soil or ground water samples. The final two paragraphs of the report then state:
The boiler in the basement of the garage on lot C is insulated with asbestos.
The insulation looked to be in fair condition. The asbestos does not pose a health threat to anyone working in the building, however, if agitated or abraded, asbestos fibers would be released into the air and would be a risk to anyone entering the basement. We recommend that the owners/ operators of the garage advise those entering the basement that care should be taken when working on or near the boiler. We also recommend that steps should be taken toward hiring a licensed asbestos removal contractor to remove, dispose of and replace the insulation.
Otherwise, based on physical observation evaluated with the historical data, it is our professional opinion that the site is free of hazardous material and oil.
After trial, judgment was entered for the defendant-seller.
1. The plaintiff-buyers now claim to be aggrieved by the trial court’s denial of three of their requests for rulings of law, including the following:
1. Defendant has not complied with paragraph 6 (b) of the Rider to Purchase and Sales Agreement dated November 5,1986. Therefore the deposit of November 5,1986 of $20,000.00 with the accrued interest from April 30, 1987, the date of demand, must be returned to plaintiffs.
The court did not address the substance of the buyers’ requests for rulings, but instead denied all three requests as improperly presenting mixed questions of law and fact. See generally, Liberatore v. Framingham, 315 Mass. 538, 543 (1944). The court’s treatment of the plaintiff-buyers’ requests raises a preliminary question as to whether the plaintiffs have preserved their right to appellate review by this Division pursuant to Dist./Mun. Cts. R. Civ. P., Rule 64(b).
Where the evidence adduced at trial is conflicting, an issue of breach of contract is ordinarily one of fact. Calvin Hosmer, Stolte Co. v. Paramount Cone Co., 285 Mass. 278, 279-280 (1934). In the instant case, however, any determination of the defendant-seller’s compliance with, or breach of, Para. 6(b) of the parties’ purchase and sale agreement depended exclusively upon an assessment of the seller’s site report as a G.Lc. 21E certification. The interpretation of a written contract or instrument constitutesaquestionoflawforthe trial court. USM Corp. v. Arthur D. Little Sys. Inc., 28 Mass. App. Ct. 108 (1989); Ober v. National Cas. Co., 318 Mass. 27, 30 (1945). It is thus evident that plaintiffs request for ruling number 1 properly raised at trial, and preserved for appellate review, an issue of law as to whether the site report provided by the seller constituted a G.Lc. 21E certification sufficient to satisfy the seller’s obligation under Para. 6(b) of the parties purchase and sale agreement See Hennebique Constr. Co. v. Boston Cold Storage & Term. Co., 230 Mass. 456, 462 (1918) (whether letter provided by plaintiff-builder constituted architect’s certificate in satisfaction of condition precedent to payment under construction contract was question of law for court).
2. We hold that the site report provided by the seller did notconstitute a “certification" that the property in question is not in violation of Chapter 2 IE as required by Rider A, Para. 6(b) of the parties’ agreement.
The use of the word “otherwise” in the definitive, conclusory sentence of the site report can be interpreted only as meaning that in some respect (s) the site was found not to be free of hazardous material. Moreover, the site report states no conclusion *161 or express assurance on the question of the threat of release of hazardous materials into the environment which is a principal concern of G.Lc. 21E.[4]
It may be reasonably inferred that, through the inclusion of Para 6 (b) in the parties’ purchase and sale agreement, the buyers soüght protection or reassurance against future liability, removal costs or other problems attending any potential violation of G.Lc. 21E on the property. The site report provided by the seller appears to provide no protection and little reassurance to the buyer beyond what he himself could have perceived. The site report thus falls far short of being a “certification” which is commonly understood to mean:
A written assurance, or official representation, that some act has or has not been done... or some legal formality been complied with.... A statement of some fact in writing signed by the party certifying.
Black’s Law Dictionary 285 (rev. 4th ed.). See also, Kay-Vee Realty Co. v. Town Clerk of Ludlow, 355 Mass. 165, 168 (1969).
3. Accordingly, the court’s judgment for the defendant is reversed and vacated. Judgment is to be entered for the plaintiffs in the amount of $20,000.00 plus accrued interest. So ordered.

 The purchase and sale agreement contains standard clauses awarding the deposit to the seller as liquidated damages upon the buyers’ breach, and providing for a return of the deposit to the buyers in the event the seller was unable to give title, make conveyance or deliver possession of the premises in accordance with the agreement Paragraph I of Rider A also provides that, in the event of breach, interest on the deposit would be retained by the non-breaching party.

 General Laws c. 21E is the “Massachusetts Oil and Hazardous Material Release Prevention Act” The Chapter sets forth a comprehensive statutory scheme for the detection and prevention of any release or threat of release of oil or hazardous materials into the Massachusetts environment

 Section 4 of G.Lc. 21E requires response whenever “there is reason to believe that oil or hazardous material has been released or thatthere is a threat of release....” “Hazardous material” is defined as material which “constitutes a present or potential threat to human health, safety, welfare or to the environment, when improperly stored, treated... disposed of, used of otherwise managed.” G.Lc. 21E, §2.